Ellen C. Pitcher, OSB No. 814454
Assistant Federal Public Defender
101 SW Main Street, Suite 1700
Portland, OR 97204
Tel: (503) 326-2123
Fax: (503) 326-5524
Email: ellen_pitcher@fd.org
Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. 08-289-JO |
| Plaintiff, | MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COUNT ONE |
| vs. | |
| KENNETH FREEMAN, | ORAL ARGUMENT REQUESTED |
| Defendant. | |

## I.    INTRODUCTION

The defendant, Kenneth Freeman, through counsel, Ellen Pitcher, hereby moves to dismiss Count One of the Indictment against him, charging him with Receiving Child Pornography, on the grounds that (1) even in the light most favorable to the government, the receipt/distribution provision of the child pornography statute does not apply to a person who has no intent to barter, trade, gift, or share the images; and (2) in the alternative, were the Court to conclude that Count One could apply to Mr. Freeman, then the receipt/distribution provision of the statute under which he is charged, 18 U.S.C. § 2252A(a)(2), is unconstitutionally vague.

In sum, Count One of the Indictment fails to state the crime for which Mr. Freeman can be indicted, or for which he can be prosecuted.[1]

## II.    STATEMENT OF THE FACTS

Due to the unique nature of this pretrial motion, the facts relevant to this Court's consideration include not only the allegations of the government, but the facts surrounding the passage and amendment of the child pornography statute that Mr. Freeman is alleged to have violated.

### A.    Kenneth Freeman

Mr. Freeman, a fifty-nine-year old resident of Irrigon, Oregon, has no prior criminal history. He suffers from degenerative disc disease, and when arrested in June, 2008, was the sole caretaker for his 84-year-old mother. She has recently undergone brain surgery and is recovering at home under Mr. Freeman's care. Mr. Freeman was arrested on June 26, 2008, and was released on conditions on June 30, 2008. He has remained in compliance with his conditions of release.

### B.    The Charges

According to the discovery provided by the government, in October 2005, an investigation into child pornography in Newark, New Jersey, pursuant to OPERATION FALCON led to the acquisition of subscriber lists for web sites suspected of distributing child pornography. Subscriber information concerning individuals living in the Portland area was forwarded to the Portland office of the Department of Homeland Security (DHS). One such

---

[1] This same argument was made previously in *United States v. David Olander,* CR 06-18-KI, which is currently before the Ninth Circuit Court of Appeals. Oral argument was heard on May 5, 2009 (*United States v. Olander*, CA 08-30285), and the case has been submitted for decision.

individual listed on the "join page" of such a web site was named Kenneth Freeman. According to the information provided to DHS, Mr. Freeman had a P.O. Box address in Irrigon, Oregon. Through identifying information, DHS agents tracked this information to the residence of the defendant, Kenneth Freeman.

Three agents visited Mr. Freeman's home on November 26, 2006, and obtained three computers from him.[2]  A search of those computers resulted in the discovery of child pornography images.  There is no allegation that Mr. Freeman sold, bartered, gifted, or otherwise shared the illegal images with any other person or that he intended to do so.

On June 24, 2008, the grand jury issued an  Indictment against Mr. Freeman alleging in Count One the crime of Receipt of Child Pornography.  Count One reads as follows:

### COUNT 1

> Beginning on or about January 1, 2006, and continuing to on or about November 29, 2006, in the District of Oregon, KENNETH R. FREEMAN, the defendant herein, knowingly received child pornography, as defined in Title 18, United States Code, Sections 2256(8), which contained visual depictions of actual minors engaged in sexually explicit conduct, such images having been transported in interstate and foreign commerce by any means, including computer; all in violation of Title 18, United States Code, Sections 2252A(a)(2) and (b)(1).

C.    The Child Pornography Statute

As relevant to this motion, the child pornography law has evolved through three important changes:  first, the federal prohibition against child pornography originally became law in 1977; second, in 1984, the original receipt/distribution provision was amended to delete

---

[2]    The legality of the search and seizure of these computers is the subject of Mr. Freeman's previously filed Motion to Suppress Evidence, which is set for an evidentiary hearing on June 16, 2009.

the requirement that the conduct be done for a commercial purpose; and finally, in 1990, the

mere possession of child pornography became a federal crime.

### 1.    The Original Child Pornography Law

The federal prohibitions against child pornography originated in the "Protection of

Children Against Sexual Exploitation Act of 1977," which provided:

§ 2252. Certain activities relating to material involving the sexual exploitation of minors

(a)    Any person who –

> (1)    knowingly transports or ships in interstate or foreign commerce or mails, for the purpose of sale or distribution for sale, any obscene visual or print medium, if –
> > (A)    the producing of such visual or print medium involves the use of a minor engaging in sexually explicit conduct; and
> > (B)    such visual or print medium depicts such conduct; or

> (2)    knowingly receives for the purpose of sale or distribution for sale, or knowingly sells or distributes for sale, any obscene visual or print medium that has been transported or shipped in interstate or foreign commerce or mailed, if –
> > (A)    the producing of such visual or print medium involves the use of a minor engaging in sexually explicit conduct; and
> > (B)    such visual or print medium depicts such conduct; shall be punished as provided in subsection (b) of this section.

Protection of Children Against Sexual Exploitation Act of 1977, Pub. L. No. 95-225, 92 Stat.

8 (1978).  The penalty subsection (subsection (b)) of the original law provided for a statutory

maximum of 10 years for violating any of the provisions of the law, unless the person had a

prior conviction under this section, which resulted in a mandatory minimum sentence of two

years and a statutory maximum of 15 years.  Protection of Children Against Sexual Exploitation

Act of 1977, Pub. L. No. 95-225, 92 Stat. 8 (1978).

2.     The Amendment Of The Receipt/Distribution Provision To
Delete The Requirement Of A Commercial Purpose

In 1984, the receipt/distribution provision of the child pornography law was amended
to remove the commercial purpose requirement.  Pub. L. No. 98-292, §4, 98 Stat. 204, 204-05
(1984).  This amendment was the result of Congress's concerns that: "Experience revealed that
much if not most child pornography material is distributed through an underground network
of pedophiles who exchange the material on a non-commercial basis, and thus no sale
is involved."  H.R. Rep. 99-910 at 4 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5952 (emphasis
added).  *See also United States v. Adams*, 343 F.3d 1024,1031-32 (9th Cir. 2003) (discussing
legislative history of child pornography law); *Free Speech Coalition v. Reno*, 198 F.3d 1083,
1088 (9th Cir. 1999) ("When the Child Protection Act of 1984 was enacted Congress
recognized that a great deal of pornographic trafficking involving children was not for profit.
Thus, the 1984 law also did away with the requirement that the production or distribution of
the material be for the purpose of sale.").  The Judiciary Committee spoke specifically to the
decision to remove the "for the purpose of sale or distribution for sale" language from the
receipt/distribution provision: "This amendment eliminates such a state of mind as an element
of the offense of transporting, shipping or receiving child pornography in interstate commerce."
H.R. 98-536 at 7, *reprinted in* 1984 U.S.C.C.A.N. 498.

A representative of the Department of Justice made a statement in favor of the
amendment, explaining that relatively few prosecutions had taken place under the original
receipt/distribution statutory framework because "many, perhaps even most, of the individuals
who distribute materials covered by 18 U.S.C. § 2252 do so by trade or exchange, without any
commercial purpose and thereby avoid violating this provision."  H.R. 98-536 at 11, *reprinted
in* 1984 U.S.C.C.A.N. 502.

Similarly, an Assistant Chief Postal Inspector explained the need to remove the commercial purpose element from the existing receipt/distribution provision:

> The Protection of Children Against Sexual Exploitation Act of 1977 applies to those who produce child pornography and/or those who transport it for sale or distribute it for sale. The act does not address the traders and lenders of child pornography, who we have found account for an appreciable number of those individuals involved in trafficking of child pornography. These individuals do not transport their material through the mails for the purpose of sale [or] distribution for sale and therefore do not violate the provisions of the statute.

H.R. 98-536 at 17, *reprinted in* 1984 U.S.C.C.A.N. 508 (emphasis added). Thus, the legislative history plainly establishes that Congress's intent in amending the receipt/distribution provision was to include individuals who receive and distribute child pornography through trade or gift, rather than for purely pecuniary gain.

3.    The 1990 Federal Criminalization Of Possession Of Child Pornography

It was not until 1990 that the possession of child pornography without intent to traffic became a federal offense. *See* Child Protection Restoration and Penalties Act of 1990, Pub. L. No. 101-647, Title III, § 323, 104 Stat. 4789, 4818-19 (1990). As stated by Senator Strom Thurmond, who introduced the bill which made mere possession an offense:

> Under current law, it is a crime to knowingly transport, distribute, receive or reproduce any child pornography which has traveled in interstate or foreign commerce. Unfortunately, those who simply possess or view this material are not covered by current law. This bill addresses this insufficiency because those who possess and view child pornography encourage its continual production and distribution.

136 Cong. Rec. S4728, S4729-30 (April 20, 1990). Similarly, the Ninth Circuit said of this amendment: "Congress likewise sought to 'stamp out' the interstate market for commercial child pornography by criminalizing intrastate possession of the good." *Adams*, 343 F.3d at 1033.

III.    THE CHARGE OF KNOWING RECEIPT OR DISTRIBUTION OF
        CHILD PORNOGRAPHY DOES NOT APPLY TO MR. FREEMAN,
        WHO MERELY DOWNLOADED IMAGES AND DID NOT INTEND TO
        TRAFFIC, SHARE, BARTER, OR GIFT THE IMAGES TO ANY OTHER
        PERSON.

In the present case, there has been no allegation that Mr. Freeman did anything beyond downloading images for personal viewing.  The issue facing the Court, whether Count Two should be dismissed for failure to state a crime of receipt/distribution under 18 U.S.C. § 2252A(a)(2), is a question of statutory interpretation.

A.    Framework For Statutory Interpretation

The starting point in the Court's statutory construction analysis is the text of the statute. *Children's Hosp. & Health Ctr. v. Belshe,* 188 F.3d 1090, 1096 (9th Cir.1999). In this phase of the analysis, the Court examines "not only the specific provision at issue, but also the structure of the statute as a whole, including its object and policy." *Id.*  "Unless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning." *BP American Production Co. v. Burton*, 127 S. Ct. 638, 643 (2006).

If the plain meaning of the statute is unambiguous, that meaning is controlling and the Court need not examine legislative history as an aid to interpretation unless "the legislative history clearly indicates that Congress meant something other than what it said." *Carson Harbor Village, Ltd. v. Unocal Corp.*, 270 F.3d 863, 877 (9th Cir. 2001) (en banc).  If the statutory language *is* ambiguous, the next step of analysis is to consult the legislative history in order to determine Congress's intent. *United States v. Daas*, 198 F.3d 1167, 1174 (9th Cir. 1999).  In addition to legislative history, interpretation of an ambiguous statute is also aided by the use of the traditional canons of statutory construction. *United States v. Male Juvenile*, 280 F.3d 1008, 1015 (9th Cir. 2002).  "Should the inquiry into congressional intent reveal an

ambiguity, the punishment provisions are to be construed in favor of lenity." *United States v. Anderson*, 850 F.2d 563, 566 (9th Cir. 1988).  In addition, under the doctrine of constitutional avoidance, courts should avoid constitutional questions where possible by construing statutes to provide protection coextensive with the constitution.  *See Clark v. Martinez*, 543 U.S. 371, 380-81 (2005).

> B.    The Text And Context Of The Child Pornography Statute Provisions Make Clear That Convictions For Receipt And Downloading Require A Trafficking Element Absent In The Current Case.

In Count One, Mr. Freeman is charged with receipt of child pornography in violation of subsection (a)(2), and if convicted, he faces a mandatory minimum five years' prison.  As examined above, under the framework for statutory interpretation, the Court first looks to the language and structure of § 2252A(a) in its entirety.

As a whole, the child pornography law prohibits the following activities:

(a)    (1)    knowingly mailing, transporting or shipping child pornography;

(2)    knowingly receiving or distributing child pornography;

(3)    knowingly –
(A)    reproducing child pornography for distribution; or
(B)    advertising, promoting, presenting, distributing, or soliciting child pornography;

(4)    knowingly selling or possessing with the intent to sell child pornography;

(5)    knowingly possessing any child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means; or

(6)    knowingly distributing, offering, sending, or providing to a minor any visual depiction of a minor engaging in sexually explicit conduct in order to induce or persuade a minor to participate in any activity that is illegal.

Individuals convicted of violating subsections 1, 2, 3, 4, and 6 all face mandatory minimum sentences of five years.  18 U.S.C. § 2252A(b)(1). A person convicted of mere possession does not face a five year minimum sentence.  18 U.S.C. § 2252A(b)(2).

In interpreting 18 U.S.C. § 2252A(a), the full text of the statute makes clear the prohibitions of each of its individual subsections.  Read in its entirety, the statute's provisions which invoke mandatory minimum sentencing (subsections 1, 2, 3, 4, and 6) all address trafficking in child pornography.  Specifically, subsection (2) criminalizes receipt or distribution. These two activities are prohibited within the same provision, thus illustrating the trafficking nature of the conduct prohibited in this subsection.  *See Dole v. United Steelworkers of America*, 494 U.S. 26, 36 (1990) ("The traditional canon of construction, *noscitur a sociis*, dictates that words groups in a list should be given related meaning.").

In contrast, the possession provision (subsection (a)(5)) seeks to criminalize the possession of child pornography when the person has no intent of trading, bartering, gifting, or sharing the images with others.  While the person who possesses certainly had to have "received" or come into possession of the images at some time, consideration of the statute in its entirety illustrates that a person coming into possession of the pornography with the intent to personally view and without the intent to pass the images along to another person is still guilty only of possession, not of receipt.

The Ninth Circuit Model Jury Instruction is consistent with this interpretation.  The final element for a conviction of Possession of Child Pornography requires:

Fourth, that [each] [the] visual depiction had been either

      a)    [mailed] [shipped] [transported] in interstate or foreign commerce, or

b)      produced using material that had been [mailed] [shipped] [transported] in interstate or foreign commerce [by computer [or other means]].

Ninth Circuit Model Jury Instruction 8.154 Sexual Exploitation of Child – Possession of Child Pornography.  Thus, inherent in a conviction for possession is the element of receiving the pornography from some other source.

C.    The "Receipt" Provision Of Section 2252A Is Ambiguous, And Therefore, Resort To Legislative History Is Appropriate.

The key statutory terms at issue here are "receive" and "possess."  The statute does not include a definition of either term.  *Webster's Dictionary* defines the term "receive" as "to take possession or delivery of,"  and "to come into possession of: acquire."  Webster's Third New International Dictionary 1894 (Philip Babcock Grove, ed. 1986).  *Webster's Dictionary* defines "possession" as "the act or condition of having in or taking into one's control or holding at one's disposal."  Webster's Third New International Dictionary 1770 (Phillop Babcock Grove, ed. 1986).  The textual analysis of the terms "receive" and "possess" shows that if the term "receive" is given its plain and ordinary meaning, absent an examination of statutory context or legislative history, Mr. Freeman's conduct could potentially be charged under either 2252A(2)(a)(A) or 2252(a)(5)(B).  However, as examined above, additional analysis of the context and legislative history of Section 2252A proves that Congress intended the receipt/distribution provision to be construed narrowly, so that the provision does not apply to mere possession of child pornography.

D.    In Light Of The Ambiguous Terms "Receive" and "Possess,"And The Applicability Of A Mandatory Minimum For Only The Receipt Provision, The Rule Of Lenity Requires The Court Construe The Receipt Provision Narrowly.

The rule of lenity provides that:

> "[A]mbiguity concerning the ambit of criminal statutes should be resolved in the favor of lenity." *Rewis v. United States,* 401 U.S. 808, 812 (1971). The Supreme Court has identified two policies underlying this rule. First, concerns of fairness suggest that "warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed. To make the warning fair, so far as possible the line should be clear." *United States v. Bass,* 404 U.S. 336, 348 (1971) (quoting *McBoyle v. United States,* 283 U.S. 25, 27 (1931) (Holmes, J.)). Second, "because of the seriousness of criminal penalties, and because criminal punishment usually represents the moral condemnation of the community, legislatures and not courts should define criminal activity." *Id.* at 348.

*United States v. LeCoe,* 936 F.2d 398, 402 (9th Cir. 1991) (citations modified). Courts have "reserved lenity for those situations in which a reasonable doubt persists about a statute's intended scope even after resort to the language and structure, legislative history, and motivating policies of the statute." *Moskal v. United States,* 498 U.S. 103, 108 (1990) (citation and internal quotation marks omitted).

In this case, Congress's intended scope of the receipt/distribution provision is significantly more narrow than the application charged by the government in this case. The government's interpretation relies on an expansive reading of vague statutory terms unsupported by the legislative history. Even if this Court were to conclude the legislative history does not foreclose a possible interpretation of the receipt /distribution provision as alleged by the government, under the rule of lenity, the receipt provision cannot apply to Mr. Freeman.

E.    The Argument Presented In This Case Has Not Been Previously Addressed By The Ninth Circuit.

Mr. Freeman recognizes that the Ninth Circuit has previously held that downloading images constitutes receipt of child pornography. *United States v. Romm*, 455 F.3d 990, 1001 (9th Cir. 2006) ("Since Romm knowingly possessed the files in the internet cache, it follows that he also knowingly received them."). *See also United States v. Kuchinski*, 469 F.3d 853, 861 (9th Cir. 2006) (citing *Romm* without further discussion to hold that downloading of images is both receipt and possession). However, *Romm* and *Kuchinski* are not controlling for three reasons.

First, in neither *Romm* nor *Kuchinski* is there any discussion of legislative history or the statutory framework argued in the current case, nor did counsel for Romm or Kuchinski base their argument on the legislative history. Second, the *Romm* Court relied on analogies to other criminal statutes criminalizing receipt and possession as separate crimes. 455 F.3d at 1001-02. The *Romm* Court's need to look to other statutes to assist in its interpretation of the receipt/distribution provision suggests ambiguity in the child pornography law itself. Thus, the *Romm* Court should have first looked to text and context of the full statute and then to the legislative history, as argued in Mr. Freeman's case. This framework would have evinced Congress's intent in the child pornography law. In so doing, the Court would not have needed to analogize to other statutes to determine what the terms of the child pornography law meant. Finally, regarding prior case law supporting its conclusion, *Romm* stated: "we held [in *U.S. v. Mohrbacher*, 182 F.3d 1041 (9th Cir. 1999)] that downloading child pornography constitutes both the act of possession and receipt." 455 F.3d at 1002. However, a closer review of *Mohrbacher* reveals that this statement is dicta and that that decision actually supports Mr. Freeman's position.

Page 12 **MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COUNT ONE**

The issue in *Mohrbacher* was whether downloading images of child pornography constituted transportation under § 2252A(a)(1).  182 F.3d at 1050.  Mohrbacher did not challenge his conviction for receipt of child pornography, nor did he present the statutory interpretation arguments advanced here.  182 F.3d at 1043.  The court noted in dicta: "A customer who is simply on the receiving end – who downloads an image that has been made available . . . is guilty of receiving or possession such materials but not shipping or transporting them."  *Mohrbacher*, 182 F.3d at 1047-51.  Thus, albeit in dicta, the *Mohrbacher* Court conflated prosecutions for receipt and possession.  182 F.3d at 1050, and 1051 (listing cases).  But, because only the transportation conviction was under attack in *Mohrbacher*, the court did not evaluate the appropriateness of what it effectively referred to as interchangeable prosecutions for possession and receipt.

Unlike the defendants in *Romm*, *Kuchinski*, or *Mohrbacher*, who failed to present the statutory interpretation arguments and legislative history set forth here, Mr. Freeman presents an entirely new argument never before considered in this Circuit.  Thus, this Court is free to rule on this question as an issue of first impression.

> F.    Because Mr. Freeman Is Not Charged With Receipt Or Distribution With Intent To Traffic In Child Pornography By Sale, Gift, Or Exchange, Count One Must Be Dismissed.

The language and structure of the child pornography statute, 18 U.S.C. § 2252A(a), establish that convictions under the receipt/distribution provision require a person to receive the images with the intent to share, barter, or gift them to another person.  Mr. Freeman is not alleged to have any intent or involvement in the receipt or distribution of images as part of a trafficking scheme, nor is he alleged to have had the intent to barter, share, or gift those images

to another person.  Therefore, Count One, on its face, fails to state a crime and should be dismissed.

## IV.   READ BROADLY, THE RECEIPT PROVISION OF 18 U.S.C. § 2252A IS IMPERMISSIBLY VAGUE AND ENABLES ARBITRARY ENFORCEMENT OF THE LAW.

If the term "receives" is given the broad interpretation, the receipt provision is unconstitutionally vague in violation of Mr. Freeman's due process rights under the Fifth Amendment.  A fundamental underpinning of our criminal justice system is that "fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed." *McBoyle v. United States*, 283 U.S. 25, 27 (1931). Laws that are so vague that they do not provide notice and fair warning of what the law proscribes violate the Fifth Amendment's guarantee of due process of law.  *Rogers v. Tennessee*, 532 U.S. 451, 457 (2001); *Connally v. General Const. Co.*, 269 U.S. 385, 391 (1925); *Weissman v. United States,* 373 F.2d 799, 803 (9th Cir. 1967).  Due process requires "that a criminal statute provide adequate notice to a person of ordinary intelligence that his contemplated conduct is illegal, for 'no man shall be held criminally responsible for conduct which he could not reasonably understand to be prescribed.'"  *Buckley v. Valeo*, 424 U.S. 1, 77 (1976) (quoting *United States v. Harris*, 347 U.S. 612, 617 (1954)).

As articulated by the Ninth Circuit:

> If a statute subjects transgressors to criminal penalties . . . vagueness review is even more exacting.  *See Kolender v. Lawson*, 461 U.S. 352, 357 (1983) (holding that penal statutes must define criminal offenses with "sufficient definiteness," and "in a manner that does not encourage arbitrary and discriminatory enforcement"); *Winters v. New York,* 333 U.S. 507, 515 (1948) (holding that where a statute imposes criminal penalties, the standard of certainty involved in vagueness review is higher). In addition to defining a core of proscribed behavior to give people constructive notice of the law, a criminal statute must provide standards to prevent arbitrary enforcement. *City of Chicago v. Morales*, 527 U.S. 41, 52 (1999). Without such standards, a statute would be

impermissibly vague even if it did not reach a substantial amount of constitutionally protected conduct, because it would subject people to the risk of arbitrary deprivation of their liberty. *Id*. Regardless of what type of conduct the criminal statute targets, the arbitrary deprivation of liberty is itself offensive to the Constitution's due process guarantee. *Smith v. Goguen*, 415 U.S. 566, 575 (1972).

\* \* \*

[W]here a statute criminalizes conduct, the law may not be impermissibly vague in any of its applications. *Kolender*, 461 U.S. at 357; *Jane L.*[*v. Bangerter*, 61 F.3d 1495,1500 (10th Cir. 1995)].

*Forbes v. Napolitano*, 236 F.3d 1009, 1011 -1012 (9th Cir. 2000) (citations modified).

In *United States v. Lanier*, 520 U.S. 259, 266 (1997), the Supreme Court set out the approach to be taken when assessing void-for-vagueness claims. First, the primary question for determination is whether the law is so vague that "men of common intelligence must necessarily guess at its meaning and differ as to its application." *Id*. Second, if ambiguity in interpretation is present in the text of the statute, the rule of lenity requires that the ambiguity be resolved in favor of the defendant. *Id*. Third, although clarity of interpretation may be supplied by judicial gloss on an otherwise uncertain statute, "due process bars the court from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *Id*. Finally, the touchstone of the vagueness doctrine is the time frame of its application to a particular defendant, for the ultimate issue raised in the context of a vagueness challenge is "whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *Id*. at 267.

A.    The Receipt/Distribution And Possession Provisions Suffer From Ambiguous Terms.

Under the first factor in the *Lanier* analysis, the terms "receive" and "possess" are

impermissibly vague because men of ordinary intelligence are unsure of the meaning of these terms in the context of the statute and differ as to their applicability. *Compare*, legislative history set forth above with *Romm*, 455 F.3d at 1001. *See also Mohrbacher*, 182 F.3d at 1050-51 (referring to two provisions almost interchangeably despite the fact that prosecution under only one provision involves five-year mandatory minimum); *United States v. Malik*, 282 F. Supp. 2d 833 (N.D. Ill. 2003) (finding terms vague), and *compare with*, *United States v. Malik*, 385 F.3d 758 (7th Cir. 2004) (finding terms not to be vague and reversing district court decision).[3]

In the present case, the government's broad reading of the impermissibly vague receipt/ distribution provision of Section 2252A(a) has culminated in the ultimate danger posed by vague criminal statutes: arbitrary enforcement. Despite the fact that Mr. Freeman is a mere possessor of child pornography, he has been arbitrarily charged with receipt of child pornography under Section 2252A(a)(2)(A). This arbitrary enforcement of the receipt provision subjects mere possessors like Mr. Freeman to the same severe punishment as persons who knowingly receive, distribute and sell child pornography, conduct that is certainly more closely linked to the harms caused by the child pornography industry than mere possession of images for personal use.

     B.     **The Rule Of Lenity Requires That The Receipt Provision Be Read Narrowly In Favor Of The Criminal Defendant.**

To the extent that 18 U.S.C. § 2252A(a)(2), and more specifically the terms "receive" and "possess" are subject to several plausible interpretations, the statute is ambiguous. Under the second factor in *Lanier*, such statutory ambiguity warrants application of the rule of lenity.

---

[3] The *Malik* decisions from the Seventh Circuit specifically addressed whether the receipt or possession federal sentencing guideline should apply. The guidelines were subsequently amended to provide a single guideline to both possession and receipt/distribution offenses.

Page 16 **MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COUNT ONE**

*United States v. Hockings,* 129 F.3d 1069, 1072 (9th Cir. 1997) (The second step in the *Lanier*

analysis requires that "the rule of lenity . . . be applied to restrict criminal statutes to conduct

clearly covered by those statutes."). Under the rule of lenity, ambiguity in a statutory text is

resolved in favor of lenity to the criminal defendant. *See United States v. R.L.C.,* 503 U.S. 291

(1992); *United States v. Martinez,* 946 F.2d 100, 102 (9th Cir. 1991). In the present case, in

which a conviction for receipt/distribution invokes a mandatory minimum sentence but for

which a conviction for possession does not, the rule of lenity requires that the receipt/distribution

provision of Section 2252A be read narrowly. This narrow reading also comports with the

legislative history of Section 2252A(a), discussed infra. The Court should construe Section

2252A(a)(2) to apply only to persons who knowingly receive child pornography as part of a

larger trafficking scheme with intent to barter, trade, gift, or share the images with others.

C.   Mr. Freeman's Proposed Interpretation Of The Receipt/Distribution Provision Is Not Novel.

The third *Lanier* factor requires the Court to interpret the statute in a manner consistent

with its structure and legislative history. As discussed above, the structure of the statute and

legislative history of 18 U.S.C. § 2252A make clear that Congress sought to criminalize receipt

and distribution of child pornography by those who intended to share, trade, barter, or gift the

images. This is not a novel interpretation, but one required upon consideration of the text,

context, and history of the statute.

D.   This Case Illustrates The Fact That The Child Pornography Statute Does Not Make Reasonably Clear What Conduct Is Subject To The Mandatory Minimum Sentencing.

The final *Lanier* factor, whether the statute, either alone or as construed, was clear as to

the conduct prohibited, weighs heavily in Mr. Freeman's favor. As charged by the government,

the receipt/distribution and possession provisions are vague and involve significant overlap in

**Page 17 MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COUNT ONE**

conduct.  *See Mohrbacher*, 182 F.3d at 1050, 1051 (in dicta, conflating prosecutions under two provisions).  This overlap is unfair considering that a mandatory minimum sentence applies to individuals charged for receipt/distribution, but not to individuals charged with possession.

Thus, were the Court to adopt an expansive reading of the coverage of the child pornography law, then the receipt/distribution provision of the law allows for arbitrary enforcement and is unconstitutionally vague on its face.  *See*, *e.g.*, *Parker v. Levy*, 417 U.S. 733, 775 (1974) ("vague statutes offend due process by failing to provide explicit standards for those who enforce them thus allowing discriminatory and arbitrary enforcement"); *Papachristou v. City of Jacksonville*, 405 U.S. 156, 165-171 ("Here the net cast [by the statute] is large, not to give the courts the power to pick and choose but to increase the arsenal of the police.").  Accordingly, the Court should dismiss Count One, the count charging the same conduct as Count Two but invoking the mandatory minimum sentence of five years.

E.    The Doctrine Of Constitutional Avoidance Mandates A Narrow
      Construction Of The Receipt/Distribution Provision.

The Doctrine of Constitutional Avoidance is a tool for choosing between competing plausible interpretations of a statutory text, resting on the reasonable presumption that Congress did not intend the alternative which raises serious constitutional doubts.  *Clark v. Martinez*, 543 U.S. 371, 382-383 (2005).  The doctrine enables a court to deviate from the language of a statute when giving effect to the statute's apparent meaning would likely render the statute unconstitutional. *See Public Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 465-466 (1989) (construing the Federal Advisory Committee Act narrowly to avoid "formidable constitutional difficulties").  The doctrine is applicable only where there is clear statutory ambiguity.  *United States v. Oakland Cannabis Buyers' Co-op*, 532 U.S. 483, 494 (2001).

In the present case, should the Court adopt the government's expansive reading of the receipt/distribution provision, then the term "receive" is ambiguous and unconstitutionally vague. This Court, relying on the doctrine of constitutional avoidance, should limit the application of the "knowingly receives or distributes" provision of the statute to persons receiving child pornography with the intent to barter, sell, gift, or share the images with another. As the legislative history indicates, Congress did not intend the receipt provision to apply to mere possessors, like Mr. Freeman. By construing the provision narrowly, so that it applies only to traffickers, this Court does not have to decide whether Section 2252A(a)(2) is unconstitutionally void-for-vagueness.

V.    CONCLUSION

For the reasons set forth in this motion and memorandum of law, Count One of the indictment against Mr. Freeman should be dismissed.

RESPECTFULLY SUBMITTED this June 9, 2009.

/s/ Ellen C. Pitcher
Ellen C. Pitcher
Attorney for Defendant