FILED'09 JUL 08 11:24USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. CR 08-289-1-JO |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| KENNETH R. FREEMAN, | ) | |
| | ) | |
| Defendant. | ) | |

Kemp L. Strickland
Kelly Zusman
UNITED STATES ATTORNEY'S OFFICE
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204

Of Attorneys for United States of America

Ellen C. Pitcher
OFFICE OF THE FEDERAL PUBLIC DEFENDER
101 S.W. Main Street, Suite 1700
Portland, OR 97204

Attorney for Defendant

JONES, Judge:

On June 24, 2009, this court issued Findings of Fact and Conclusions of Law ("Findings and Conclusions") (# 35) on defendant Kenneth Ray Freeman's motion to suppress and ordered the government to show cause by July 1, 2009,[1] as to why the indictment against defendant should not be dismissed.[2]

In response to the order to show cause, the government represents that after the suppression hearing on June 16, 2009, it found child pornography images on the computer seized in June 2008, and raises new legal arguments to challenge my ruling that all of the evidence acquired as a result of the November 29, 2006, unlawful search and seizure, including the evidence seized during defendant's arrest on June 26, 2008, was tainted and therefore suppressed. Specifically, the government now contends, for the first time in this proceeding, that the 19-month interval between the 2006 unlawful search and seizure and the 2008 arrest and seizure was so attenuated as to dissipate the "taint" of the original unlawful conduct. For the reasons explained below, I reject the government's theory, and grant defendant's motion to dismiss the indictment (# 30).

**DISCUSSION**

As an initial matter, at the outset of the suppression hearing defense counsel unequivocally stated that the motion to suppress was directed to the evidence acquired both on

---

[1] I granted the government's request for an extension of time to respond to July 17, 2009, but the government filed its response by the original date. The defense requested an additional 100 days to respond after the government, but that request is now moot as a result of this disposition.

[2] On June 24, 2008, Freeman was charged with two Counts, receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2)(A) and (b)(1), and possession of child pornography in violation of 18 U.S.C. § 2252(a)(5)(B).

November 29, 2006, and on June 26, 2008. She explained to the court that "[a]t that time [June 26, 2008] there was an arrest warrant, but it was based entirely on the information that was seized and the evidence that they obtained on November 29, 2006. And if the court suppresses that evidence, our argument is that everything on June 26th would also go." (Tr. at 7-8.) The government then conceded that "[i]f the court suppresses the evidence, the physical evidence that we have on November 29, 2006, we won't have a case . . . ." (Tr. at 8.) Because I determined at the hearing that the November 29, 2006, search and seizure was unlawful, I suppressed all of the evidence and, therefore, initially dismissed the case on the record immediately following the hearing.

Before I issued my formal Findings and Conclusions, the government objected to defendant's motion to dismiss the indictment, arguing that dismissal was not an appropriate remedy. In an attempt to ascertain what was left of the government's case, as part of my Findings and Conclusions I issued an order for the government to show cause as to why the indictment should not be dismissed. As mentioned above, despite the prosecutor's concession, in open court, that a ruling suppressing the 2006 evidence would mean that "[the government] won't have a case," the government now proposes a theory of attenuation to redeem (or purge the taint from) the otherwise poisonous fruit, a theory I have considered and find to be untenable under the circumstances of this case.

According to the government, "[t]o suppress a computer seized during the course of an otherwise lawful arrest, and pursuant to a valid consent to seize and search form that defendant readily admits he read and understood, would sweep too broadly." Government's Response, p. 4 (footnote omitted). The government's reasoning apparently rests on the assertion, at page 5 of its

Response, that "this case is somewhat unique in that this defendant was not arrested in connection with the seizure that this Court has determined was lawful." If that were so, then the analysis might be different, but in fact, the arrest warrant executed in June 2008 was based entirely on the evidence unlawfully seized in November 2006. Senior Special Agent Findley's testimony during the suppression hearing underscored this point:

> THE COURT: Why did it take you [so many] months [to return to arrest defendant]?
>
> THE WITNESS: They had problems imaging his –
>
> * * *
>
> BY MR. STRICKLAND:
>
> Q Do you know why it took that long?
>
> A Yeah. It was -- there was an issue with the computer forensics on one of his computers and getting the information off of it. And then there were other delays, you know. Present the case to the U.S. attorney's office, and, you know, there's conflicts and stuff like that, so . . .

(Tr. 47-48.) Thus, the government did not develop any independent basis to arrest defendant; the only reason for the extensive delay between the unlawful search and seizure and the much later arrest was delay by the government's agents and attorneys themselves.

This court does not accept the government's own delay as a valid underpinning for a finding of attenuation. Indeed, the Eleventh Circuit recently held that a 21-day delay between when ICE[3] agents seized a computer hard drive believed to contain child pornography and when the agents obtained a search warrant to examine the hard drive was so unreasonable as to require

---

[3] "ICE" means Department of Homeland Security, Immigration and Customs Enforcement.

suppression of the evidence, particularly because the excuse offered for the delay -- that the agent "didn't see any urgency of the fact that there needed to be a search warrant during the two weeks that [he was at a training program]" -- was insufficient. See U.S. v. Mitchell, 565 F.3d 1347, 1351-52 (11th Cir. 2009).[4] In this case, the 19-month delay on which the government relies for its attenuation argument is attributable solely to the government itself, and the government has offered little in the way of justification for that delay. Under this circumstance, to find that the taint from the initial unlawful search and seizure was somehow ameliorated would lead to an untenable conclusion -- that the taint resulting from an unlawful search and seizure may be purged merely through the government's own delay in using that tainted evidence for some period of time. This court cannot and does not accept that theory.

The government relies on U.S. v. Ceccolini, 435 U.S. 268, 279-80 (1978), for the proposition that "a time lapse of four months is 'substantial,' and favors a finding of attenuation, particularly for evidence that involves a live witness." Government's Response, p. 4. The government admits, as it should, that Ceccolini involved evidence in the form of a live witness; a fair reading of Ceccolini demonstrates that in its reasoning, the Court very carefully distinguished between physical and testimonial evidence, in significant part because live witnesses presumably have free will. As the Court explained:

> Witnesses are not like guns or documents which remain hidden from view until one turns over a sofa or opens a filing cabinet. Witnesses can, and often do, come

---

[4] In this case, the government delayed approximately one year after the June 28, 2008, seizure of the fourth computer before completing the forensic examination of that computer, as revealed by the government's response. See Government's Response, p. 2 ("When the parties appeared before this Court for an evidentiary hearing [on June 16, 2009] on defendant's motion to suppress, the laptop computer ICE agents seized in June 2008 . . . had not yet been forensically analyzed.").

> forward and offer evidence entirely of their own volition. And evaluated properly, the degree of free will necessary to dissipate the taint will very likely be found more often in the case of live-witness testimony than other kinds of evidence.
>
> * * *
>
> [O]bviously [the factors we have discussed] all point to the conclusion that the exclusionary rule should be invoked with much greater reluctance where the claim is based on a causal relationship between a constitutional violation and the discovery of a live witness than when a similar claim is advanced to support suppression of an inanimate object.

Ceccolini, 435 U.S. at 276-77, 280. Thus, Ceccolini, while instructive, does not advance the government's argument here.

In sum, I find the government's attenuation theory, under the circumstances in this case and for reasons explained above, to be without merit. Consequently, I only briefly address the three factors the government promotes as the correct analysis. See Government's Response, p. 3 (citing U.S. v. Washington, 387 F.3d 1060 (9th Cir. 2004)). Under that three-part test, the court examines the temporal proximity between the illegality and consent; any intervening circumstances; and the "purpose and flagrancy of the official misconduct." Washington, 387 F.3d at 1073.

With respect to temporal proximity and intervening circumstances, as discussed above, I find that the government is solely responsible for the delay and that the only "intervening circumstance"[5] is the government's delay in performing the forensic analysis of the computers and obtaining the arrest warrant.

---

[5] The government contends that an intervening circumstance here is that "this defendant was not arrested in connection with the seizure that this Court has determined was unlawful." Government Response, p. 5. As stated earlier in this Order, I reject that proposition and find, as I did in my Findings and Conclusions (at page 14), that defendant's arrest was based entirely on the search and seizure that I determined to be unlawful.

With respect to the "purpose and flagrancy of the official misconduct," the government characterizes the agents' conduct as "at best, negligent conduct." Government's Response, p. 6. The government takes issue with my description of their conduct, particularly my comment that "knock and talk" was a "dubious . . . method to gain access to [defendant's] home and seize his computers." Findings and Conclusions, p. 6. According to the government, "the law in this Circuit and in this district has been well-settled on the legality and validity of knock and talks for over 40 years." Government's Response, p. 7. That statement, while accurate in some cases, disregards that not all "knock and talks" are the same, and not all "knock and talks" have been upheld in the Ninth Circuit as legal or valid.

In U.S. v. Crapser, 472 F.3d 1141 (9th Cir. 2007), the Ninth Circuit, quoting at length from U.S. v. Cormier, 220 F.3d 1103 (9th Cir. 2000), indeed observed that:

> This Court stated the general rule regarding "knock and talk" encounters almost forty years ago in the following passage:
>
>> "Absent express orders from the person in possession against any possible trespass, there is no rule of private or public conduct which makes it illegal per se, or a condemned invasion of the person's right of privacy, for anyone openly and peaceably, at high noon, to walk up the steps and knock on the front door of any man's 'castle' with the honest intent of asking questions of the occupant thereof - whether the questioner be a pollster, a salesman, or an officer of the law."
>
> That view has now become a firmly-rooted notion in Fourth Amendment jurisprudence.

Crapser, 472 F.3d at 1146 (quoting Cormier, 220 F.3d at 1109, which in turn quotes Davis v. United States, 327 F.2d 301, 303 (9th Cir. 1964)).

"Knock and talk" may be a firmly-rooted notion, but the Ninth Circuit has not hesitated to find that a knock and talk amounts to a seizure instead of a consensual encounter when the circumstances support such a finding. See Crapser, 472 F.3d at 1146-47, in which the court explained:

> It also is instructive to contrast this case with Orhorhaghe v. INS, 38 F.3d 488 (9th Cir. 1994), in which we found a seizure instead of a consensual encounter. There, the officers positioned themselves so as to be certain the defendant could not escape or leave, the officers made a deliberate effort to reveal their concealed firearms; the encounter occurred in a non-public setting, and the officers acted in an aggressive manner suggesting that compliance would be compelled. The ratio of officers to defendants was 4 to 1. Id. at 491; see also United States v. Washington, 387 F.3d 1060, 1068-69 (9th Cir. 2004)(holding that an encounter was not consensual where it occurred in a private place, the officers refused to honor the defendant's request to shut the door, and the officers advised the defendant several times that he could be arrested and told him he could not terminate the encounter).

In this case, Agent Findley testified that ICE learned through "various investigations conducted by our cyber center" that "[defendant] had paid for access to child pornography websites . . . on 46 different occasions, spanning three years." (Tr. 23.) Through credit card information and defendant's IP address, ICE tracked defendant's address to Irrigon, Oregon. Id. According to Agent Findley, the information ICE obtained concerning defendant's payment was over a year old; Agent Findley did not explain why ICE did not act on the information sooner or why ICE did not attempt to update its information. Agent Findley did, however, tell the court that he did not apply for a warrant because in this district, the information would be considered stale. (Tr. 25.)

Despite the lack of recent information sufficient to apply for a warrant, the agents made an operation plan to go to Irrigon in October 2006. (Tr. 23.) The agents did not conduct the

"knock and talk" at "high noon" in a public place; instead, they conducted it on a cold, dark night in November 2006 at a private residence in remote Eastern Oregon. The ratio of agents to defendants was three to one. Further, as I found from the evidence adduced at the suppression hearing, the agents ignored defendant's multiple requests that they leave; they persisted in their efforts to get defendant out of his residence; they refused to leave defendant's front porch; and in essence, pushed their way into defendant's home when he retreated inside. <u>See</u> Findings and Conclusions, pp. 10-11, ¶¶ 2-4. In view of that evidence, I described the "knock and talk" that occurred in this case as a "dubious method" to gain access to defendant's home and seize his computers, a description to which I continue to adhere.

In summary, the government has failed to show cause why the indictment should not be dismissed. Consequently, I GRANT defendant's motion (# 30) and DISMISS the indictment.

IT IS SO ORDERED.

DATED this 8th day of July, 2009.

ROBERT E. JONES
U.S. District Judge